IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| RODNEY RHODES, # 200567, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 1:15cv426-MHT |
| ) | (WO) |
| KARLA JONES, *et al.,* ) | |
| ) | |
| Respondents. ) | |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

This matter concerns a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254 filed by Alabama inmate Rodney Rhodes ("Rhodes"). Doc. No. 1.[1]

## I. BACKGROUND

In October 2012, a Houston County jury convicted Rhodes of domestic violence by strangulation or suffocation, a violation of § 13A-6-138, Ala. Code 1975. The trial court sentenced Rhodes as a habitual felony offender to 18 years in prison.

Rhodes appealed, arguing (1) there was insufficient evidence to sustain his conviction because the State did not prove he and the victim were in a "qualified relationship" as defined by § 13A-6-138, and (2) his 18-year sentence was disproportionate to the crime he committed. Doc. No. 10-3. On July 3, 2013, the Alabama Court of Criminal Appeals affirmed his conviction and sentence by memorandum opinion. Doc. No. 10-5.

---

[1] Document numbers ("Doc. No.") are those assigned by the clerk of court in this civil action. Page references are to those assigned by CM/ECF.

Rhodes applied for rehearing, which was overruled. Doc. Nos. 10-6 & 10-7. On November 22, 2013, the Alabama Supreme Court denied his petition for writ of certiorari. Doc. No. 10-9.

On January 16, 2014, Rhodes filed a petition in the trial court seeking post-conviction relief under Rule 32 of the Alabama Rules of Criminal Procedure. *See* Doc. No. 10-10 at 7. In his Rule 32 petition, he presented the following claims:

1. His trial counsel rendered ineffective assistance by—

   (a) failing to investigate the case to determine if a medical report corroborated or contradicted the victim's allegations;

   (b) failing to obtain medical testimony from Kim Hanson (a nurse who, according to Rhodes, authored the medical report) about the victim's injuries;

   (c) failing to object when (i) the victim testified that Rhodes was previously incarcerated; (ii) the victim gave hearsay testimony; (iii) the State introduced photographs of the victim's injuries without establishing a proper chain of custody; and (iv) the prosecutor asked the victim leading questions;

   (d) failing to subpoena the victim's cellular telephone records to impeach her testimony and show she called Rhodes several times after their breakup and on the night of the incident.

2. The State's evidence was insufficient evidence to sustain the conviction for domestic violence by strangulation or suffocation.

3. Rhodes was denied his right to confront and cross-examine Kim Hanson about the victim's injuries.

4. The trial court erroneously admitted hearsay testimony.

5. The victim committed perjury regarding whether she had further contact with Rhodes later on the night of the incident.

Doc. No. 10-10 at 7–43.

The trial court entered an order on February 7, 2014, summarily denying Rhodes's Rule 32 petition. Doc. No. 10-10 at 49. Rhodes appealed, pursuing most claims in the petition. On August 22, 2014, the Alabama Court of Criminal Appeals affirmed the trial court's judgment denying Rhodes's Rule 32 petition. Doc. No. 10-14. Rhodes applied for rehearing, which was overruled. Doc. Nos. 10-15 & 10-16. On November 14, 2014, the Alabama Supreme Court denied his petition for writ of certiorari.

On June 12, 2014, Rhodes initiated this habeas action by filing a § 2254 petition in which he reasserts many of the claims he presented in his Rule 32 petition[2] and his challenge to the sufficiency of the evidence, a claim he presented both in his Rule 32 petition and on direct appeal. *See* Doc. Nos. 1 & 2. For the reasons that follow, the court concludes that Rhodes's § 2254 petition should be denied without an evidentiary hearing and dismissed with prejudice.

## II. DISCUSSION

### A. Claims Adjudicated on Merits by State Courts

"When it enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress significantly limited the circumstances under which a habeas petitioner may obtain relief." *Hardy v. Allen*, 2010 WL 9447204, at *7 (N.D. Ala. Sep. 21,

---

[2] Rhodes's § 2254 petition does not present any arguments in support of his Rule 32 claims that his trial counsel was ineffective for failing to object when the prosecutor asked the victim leading questions and for failing to subpoena the victim's telephone records.

3

2010). To prevail on a § 2254 claim adjudicated on the merits by the state courts, a petitioner must show that a decision by the state courts was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts, in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(1) & (2); *see Williams v. Taylor*, 529 U.S. 362, 404–05 & 412–13 (2000).

A state court's decision is "contrary to" federal law either if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts "materially indistinguishable" from those in a controlling case, but nonetheless reaches a different result. *Williams*, 529 U.S. at 404–06; *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court's decision is an "unreasonable application" of federal law if it either correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or it extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 407.

"Objectively unreasonable" means something more than an "erroneous" or "incorrect" application of clearly established law, and a reviewing federal court may not substitute its judgment for the state court's even if the federal court, in its own independent judgment, disagrees with the state court's decision. *See Williams*, 529 U.S. at 411; *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003). The reviewing court "must determine what arguments or theories supported or ... could have supported[ ] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or

theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "This is a 'difficult to meet,' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 536 U.S. 170, 181 (2011) (internal citations omitted).

Federal courts are likewise directed to determine whether the state court based its findings on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### 1. *Sufficiency of the Evidence*

Rhodes argues there was insufficient evidence to sustain his conviction for domestic violence by strangulation or suffocation because, he says, the State did not prove he and the victim were in a "qualified relationship" for purposes of § 13A-6-138, Ala. Code 1975. Doc. No. 1 at 4; Doc. No. 2 at 28–36. Rhodes exhausted this claim in the state courts by presenting it to the trial court and pursuing it through the direct appeal process.

The Due Process Clause of the Fourteenth Amendment prohibits a criminal conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime." *In re Winship*, 397 U.S. 358, 364 (1970). Habeas relief on the merits of a claim of legally insufficient evidence is appropriate under § 2254 only "if it is found that upon the record evidence adduced at trial no rational trier of fact could have found

5

proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *see also Lewis v. Jeffers*, 497 U.S. 764, 781 (1990).

> [T]his inquiry does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." ... [I]nstead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson*, 443 U.S. at 318–19.

"A person commits the crime of domestic violence by strangulation or suffocation if the person commits an assault with intent to cause physical harm or commits the crime of menacing pursuant to Section 13A-6-23, by strangulation or suffocation or attempted strangulation or suffocation *against a person with whom the defendant has a qualified relationship*." § 13A-6-138(b), Ala. Code 1975 (emphasis added). Under § 13A-6-138(a)(1), Ala. Code 1975, a "qualified relationship" exists when the "victim is a spouse, former spouse, parent, stepparent, child, stepchild, or a person with whom the defendant has a child in common, or *with whom the defendant has or had a dating or engagement relationship within 10 months preceding this event.*" (Emphasis added.)

Rhodes maintains the State failed to prove that he and the victim, Carolyn Lett, were in a relationship that existed within 10 months of the incident for which he was convicted. Rhodes's physical attack on Lett, during which he punched and kicked Lett and wrapped an electrical cord around her neck to choke her, took place on April 14, 2012. *See, e.g.*, Doc. No. 10-1 at 90–94. Lett testified that she and Rhodes were in a relationship for about a year and a-half prior to the incident and that the relationship ended in April 2012. *Id*. at 78–79. During part of that time, Rhodes stayed at Lett's house. *Id*. at 79 & 83. Lett

6

testified that earlier in April 2012, prior to the incident, she called Rhodes's parents to ask them to get Rhodes and his things out of her house, and Rhodes's father had to come to her house to talk to Rhodes and get him to leave. *Id.* at 82–83. John Crawford, an officer with the Dothan Police Department who investigated the incident, testified that Lett and Rhodes's relationship ended shortly before the incident. *Id*. at 170. The Alabama Court of Criminal Appeals pointed to the testimony of Lett and Crawford in concluding that "the jury could have reasonably found that Lett and Rhodes were in a 'qualified relationship'" for purposes of § 13A-6-138. Doc. No. 10-5 at 4–5.

The State's evidence was sufficient to show that Rhodes and Lett were in a relationship that existed within 10 months of the incident for which Rhodes was convicted. The state court decision denying Rhodes's insufficiency-of-the-evidence claim was neither contrary to nor an unreasonable application of clearly established federal law, and it did not involve an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1) & (2). Consequently, Rhodes is entitled to no relief on this claim.

### 2. *Claims of Ineffective Assistance of Counsel*

*Strickland v. Washington*, 466 U.S. 668 (1984), sets forth the clearly established federal law on claims of ineffective assistance of counsel and requires that a petitioner alleging ineffective assistance establish that his counsel's performance was deficient and that he was actually prejudiced by the inadequate performance. 466 U.S. at 687. This requires showing both that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose

7

result is reliable." *Id*. The petitioner must demonstrate that counsel's performance "fell below an objective standard of reasonableness," *id.* at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

An ineffective assistance of counsel claim is examined under the "totality of the circumstances." *House v. Balkcom*, 725 F.2d 608, 615 (11th Cir.1984). An attorney's performance is presumed to have been reasonable and must not be examined with the aid of judicial hindsight. *Messer v. Kemp*, 760 F.2d 1080, 1088 (11th Cir. 1985). A federal court must apply a "heavy measure of deference to counsel's judgments." *Singleton v. Thigpen,* 847 F.2d 668, 670 (11th Cir. 1988) (quoting *Strickland,* 446 U.S. at 691).

### a. Failure to obtain medical report and medical testimony about Lett's injuries

As he did in his Rule 32 petition, Rhodes contends that his trial counsel rendered ineffective assistance by failing to obtain a medical report to determine if it corroborated or contradicted Lett's allegations about her injuries and by failing to obtain testimony from the nurse, Kim Hanson, who allegedly authored the medical report. According to Rhodes, such evidence could have undermined Lett's testimony as to when her injuries were inflicted. Doc. No. 1 at 4; Doc. No. 2 at 3–4 & 11–13.

Addressing this claim, the Alabama Court of Criminal Appeals stated:

> [In his Rule 32 petition,] Rhodes did not specifically identify any information allegedly contained in the report or that Hanson could have testified to. Rather, he merely speculated about the contents of the medical report and the testimony that Kim Hanson could have allegedly provided.

> At trial, the victim testified that Rhodes strangled her with an electrical cord but that she did not immediately seek medical attention. Rhodes admits in his petition that the photographs entered into evidence, as well as the medical report, detailed marks on the victim's neck consistent with strangulation. Rhodes merely stated that "a jury could infer from these records and medical testimony that these marks were not the result of the petitioner's action the night in question as alleged by the victim." (C. 17.) A review of the record from [Rhodes's trial], reveals that the State admitted numerous photographs depicting the victim's injuries. Those injuries were consistent with her testimony. Rhodes is essentially alleging that trial counsel should have advanced the argument that the victim was strangled at an earlier date than she reported in order to undermine her credibility.
>
> However, trial counsel could have made a reasonable, strategic decision not to advance such an argument after observing the photographs. Accordingly, Rhodes has failed to plead facts which, if true, would have demonstrated that trial counsel was deficient under the first prong of *Strickland*.

Doc. No. 10-14 at 5–6.

Because the state court ruled on the merits of Rhodes's ineffective-assistance claim, this court's § 2254 review under *Strickland* is another step removed from the original analysis, or as the Supreme Court puts it, "doubly deferential." *Burt v. Titlow*, ___ U.S. ___, ___, 134 S.Ct. 10, 13 (2013) (quotation marks and citation omitted); *see Tanzi v. Sec'y, Florida Dep't of Corr.*, 772 F.3d 644, 652 (11th Cir. 2014) (quoting *Burt*). Rhodes fails to establish that there was any information in the medical report beneficial to his defense or that Hanson would have given testimony beneficial to his defense. Therefore, he cannot show he was prejudiced by his trial counsel's alleged deficiencies. The state court correctly identified *Strickland* as the controlling law and properly applied it to Rhodes's ineffective-assistance claim. The state court decision was neither contrary to nor an unreasonable application of clearly established federal law, and it did not involve an

unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1) & (2). Consequently, Rhodes is not entitled to federal habeas relief on this claim.

### b. Failure to object to testimony about prior incarceration

Rhodes contends that his trial counsel was ineffective for failing to object when Lett testified that Rhodes had previously been incarcerated. Rhodes argues that Lett's reference to his prior incarceration constituted inadmissible and prejudicial evidence of prior bad acts. Doc. No. 1 at 4; Doc. No. 2 at 7–11.

The Alabama Court of Criminal Appeal addressed this claim as follows:

> According to Rhodes, he was incarcerated on "unrelated charges." (C. 20.) However, a review of the record from [Rhodes's trial] reveals that Rhodes was incarcerated for a previous incident of domestic violence involving the same victim. (R2. 22–23.) Such evidence would have been admissible under Rule 404(b), Ala.R.Evid., in order to show motive or intent. Thus, any objection would likely have been overruled and trial counsel was not ineffective for failing to raise a meritless objection. *See Patrick v. State*, 680 So. 2d 959, 963 (Ala. Crim. App. 1996) (holding that counsel would not be ineffective for failing to assert a meritless claim).

Doc. No. 10-14 at 6.

Under Alabama law vidence of a defendant's prior abuse of a victim is admissible to show motive and intent in a prosecution based on the defendant's commission of intentional acts of violence against the victim. *See, e.g., Hulsey v. State*, 866 So. 2d 1180, 1190–91 (Ala. Crim. App. 2003). Thus, an objection by counsel to Lett's testimony that Rhodes had been incarcerated for his previous abuse of her would have been unavailing. Further, there was ample other testimony at trial referencing Rhodes's prior abuse of Lett. Consequently, Rhodes fails to demonstrate a reasonable probability that the outcome of his

10

trial would have been different had his counsel objected to Lett's reference to his prior incarceration. The state court decision denying relief on this claim was neither contrary to nor an unreasonable application of clearly established federal law, and it did not involve an unreasonable determination of the facts in light of the evidence presented. Rhodes is not entitled to habeas relief based on this claim.

### c. Hearsay testimony

Rhodes contends (*see* Doc. No. 1 at 4; Doc. No. 2 at 14–15) that his trial counsel was ineffective for failing to raise a hearsay objection to the following testimony by Lett in which Lett described contacting Rhodes's parents to get them to move Rhodes out of her residence:

> Well, I called his mom and told her to come get him. And she was just saying she's tired of getting in our relationship. And she's tired of this and that, because it's a back and forth thing. But I told her I was done. And the dad finally came over. And I told his dad to his face that I do not want him no more. And he told me—well, he told Rodney to get up, because I told that to his face that I didn't want him no more.

Doc. No. 10–1 at 82.

In denying relief on Rhodes's claim, the Alabama Court of Criminal Appeals stated, "Rhodes did not explain [in his Rule 32 petition], nor does this Court see, how the exclusion of the above-mentioned testimony would have changed the outcome of Rhodes's trial." Doc. 10-14 at 7.

This court, too, does not see how a successful objection to the only arguable hearsay content in the above-quoted testimony—i.e., whether in fact Rhodes's mother was, as she allegedly told Lett, "tired of getting in" Rhodes and Lett's relationship—would have

11

affected the outcome of the proceedings. Rhodes fails to demonstrate that his counsel was ineffective by failing to raise a hearsay objection to this testimony. The state court decision denying relief on this claim was neither contrary to nor an unreasonable application of clearly established federal law, and it did not involve an unreasonable determination of the facts in light of the evidence presented. Rhodes is not entitled to habeas relief based on this claim.

### d. Admission of photographs/"chain of custody"

Rhodes says his trial counsel was ineffective for failing to object to the admission of photographs of Lett and her injuries on the ground there was not a proper chain of custody. Doc. No. 1 at 4; Doc. No. 2 at 17–19.

Addressing this claim, the Alabama Court of Criminal Appeals stated,

> Rhodes claim[s] that the State failed to prove a proper chain of custody for several photographs that were admitted into evidence. This Court has discussed the requirements for admitting photographs:
>
>> """Before photographs may be properly admitted, two general conditions must be satisfied. First, the picture must be properly verified and secondly, the photographs must tend to prove or disprove some relevant fact or must corroborate or disprove some other evidence offered or to be offered. [Citations omitted.] Whether a photograph is admissible is left up to the sound discretion of the trial court and his decision will not be reversed except for a showing of abuse.""""
>
> *Spurgeon v. State*, 560 So. 2d 1116, 1122 (Ala. Crim. App. 1989), quoting *Lewis v. State*, 465 So. 2d 1185 (Ala. Crim. App. 1984), quoting in turn *Harrison v. State*, 421 So. 2d 101, 103–04 (Ala. 1982).
>
> However, a review of the record from [Rhodes's trial] reveals that the victim, at trial, reviewed the photographs in question and identified them as being accurate photographs of her injuries that were taken by an officer from the Dothan Police Department. Photographs of the victim's injuries were

> certainly relevant to prove that she had been strangled. Accordingly, the photographs were properly admitted and trial counsel was not ineffective for failing to object.

Doc. No. 10-14 at 7–8.

Rhodes demonstrates no error in admission of the photographs. Both Lett and Dothan police officer John Crawford, who talked to Lett in the hospital after the incident and observed her condition, testified that the photographs accurately depicted Lett's injuries when the photographs were taken. *See* Doc. No. 10-1 at 168. Rhodes fails to demonstrate that his trial counsel was ineffective for failing to challenge the predicate for admission of the photographs. The state court decision denying relief on this claim was neither contrary to nor an unreasonable application of clearly established federal law, and it did not involve an unreasonable determination of the facts in light of the evidence presented.

**B. Procedural Default: Adequate and Independent State Ground for Denying Relief**

Federal habeas review may be unavailable for claims that a state appellate court has rejected on state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). When a state prisoner fails to follow state procedural rules, thereby procedurally defaulting on a claim, the authority of federal courts to review the prisoner's state court criminal conviction is "severely restricted." *Johnson v. Singletary*, 938 F.2d 1166, 1173 (11th Cir. 1991). "Federal review of a petitioner's claim is barred by the procedural-default doctrine if the last state court to review the claim states clearly and expressly that its judgment rests on a procedural bar, and that bar provides an adequate and independent state ground for

denying relief." *Atkins v. Singletary*, 965 F.2d 952, 955 (11th Cir. 1992); *see Marek v. Singletary*, 62 F.3d 1295, 1301–02 (11th Cir. 1995).

> By its very definition, the adequate and independent state-ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. *See Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935). Thus, by applying this doctrine to habeas cases, [*Wainwright v. Sykes*, 433 U.S. 72 (1977)] curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision. In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.

*Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989).

In affirming the trial court's judgment denying Rhodes's Rule 32 petition, the Alabama Court of Criminal Appeals held that the following three Rule 32 claims by Rhodes were precluded under Ala.R.Crim.P. 32.2(a)(3) and (a)(5) because they could have been, but were not, raised and addressed at trial and on appeal: (1) Rhodes was denied his right to confront and cross-examine Kim Hanson about Lett's injuries; (2) the trial court erroneously admitted hearsay testimony; and (3) Lett committed perjury regarding whether she had further contact with Rhodes later on the night of the incident. *See* Doc. No. 10-14 at 3. The state appellate court's application of Ala.R.Crim.P. 32.2(a)(3) and (a)(5) constitutes adequate and independent state procedural grounds. *Harris*, 489 U.S. at 264 n.10. These procedural bars are firmly established and regularly followed by Alabama appellate courts.[3] *See, e.g., Tucker v. State*, 696 So.2d 1170, 1171–73 (Ala. Crim. App.

---

[3] In order to bar federal review, the state procedural bar must have been "firmly established and regularly followed" at the time of the alleged default. *Ford v. Georgia*, 498 U.S. 411, 424 (1991).

2006); *Horsley v. State*, 675 So. 2d 908, 909; *Brownlee v. Haley*, 306 F.3d 1043, 1065–66 (11th Cir. 2002). Consequently, these three listed claims are procedurally defaulted.

A habeas petitioner can overcome a procedural default either through showing cause for the default and resulting prejudice, *Murray v. Carrier*, 477 U.S. 478, 488 (1986), or establishing a "fundamental miscarriage of justice," which requires a colorable showing of actual innocence, *Schlup v. Delo*, 513 U.S. 298, 324–27 (1995).[4] Cause for a procedural default must ordinarily turn on whether the petitioner can show that some objective factor external to the defense impeded efforts to comply with the state's procedural rules. *Murray*, 477 U.S. at 488; *United States v. Frady*, 456 U.S. 152, 170 (1982). Examples of such external impediments include a factual or legal basis for a claim that was not reasonably available, interference with the defense by government officials, or constitutionally ineffective assistance of counsel. *Murray,* 477 U.S. at 488. To establish prejudice, a petitioner must show that the errors worked to his "actual and substantial disadvantage, infecting his entire [proceeding] with error of constitutional dimensions." *Id.* at 494 (internal quotations and emphasis omitted).

Rhodes maintains that his trial counsel performed deficiently in allowing his confrontation rights to be violated, specifically by failing to ensure that Kim Hanson was called to testify at trial about Lett's injuries and the medical report she allegedly authored. *See, e.g.*, Doc. No. 2 at 24–26 & 30. Assuming Rhodes is asserting ineffective assistance

---

[4] Prisoners asserting actual innocence as a gateway to review of defaulted claims must establish that, in light of new evidence, "it is more likely than not that no reasonable juror would have found [the] petitioner guilty beyond a reasonable doubt." *Schlup,* 513 U.S. at 327. Rhodes does not try to argue that the actual-innocence exception provides a gateway for review of his procedurally defaulted claims.

15

of counsel as cause for his procedural default of an underlying Sixth Amendment right-to-confrontation claim, he demonstrates no merit in his ineffective-assistance claim. An ineffectiveness claim must be meritorious to serve as cause to overcome the procedural default of another claim. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002). As stated above in this Recommendation (Part II.A.2.a), Rhodes wholly fails to show there was information in the medical report beneficial to his defense or that Hanson would have provided testimony beneficial to his defense. Further, there is no indication that the charges against Rhodes were based on statements by Hanson or the contents of a medical report. At trial, none of the State's witnesses referenced Hanson or the medical report she allegedly authored. All testimony regarding Lett's injuries came from Lett, from her friend and neighbor Audrey Jones, and from Dothan police officer John Crawford. Rhodes had no Sixth Amendment right to confront Hanson, because Hanson was not a witness against him and the charges against him were not based on any "accusations" by Hanson. Consequently, trial counsel's failure to call Hanson to testify did not result in a violation of Rhodes's confrontation rights. Because counsel did not render ineffective assistance, Rhodes fails to demonstrate cause excusing the default of his right-to-confrontation claim.

Rhodes asserted an independent claim of ineffective assistance of counsel based on counsel's failure to object to the admission of alleged hearsay testimony. As discussed above in this Recommendation (Part II.A.2.c), there is no merit to this ineffective-assistance claim. Rhodes therefore fails to demonstrate cause for his procedural default of his substantive claim regarding the admission of hearsay.

Rhodes also asserts that his trial counsel was ineffective for failing to challenge allegedly perjured testimony by Lett regarding whether she had further contact with Rhodes later on the night of the incident. *See* Doc. No. 2 at 20–21. Again, assuming Rhodes is asserting ineffective assistance of counsel as cause excusing the default of his substantive perjury claim, Rhodes fails to demonstrate Lett's testimony was perjurious; consequently, his trial counsel was not ineffective for failing to argue Lett gave perjured testimony. Rhodes's attack on Lett occurred on the evening of April 14, 2012, a Saturday. On direct examination, after the prosecutor asked Lett if she had any contact with Rhodes "that Sunday after it happened, … after this altercation occurred when he attacked you on the 14th," Lett initially answered no. Doc. 10-1 at 115. When the prosecutor then asked, "Did you hang out with him on Sunday, spend the night with him, or go to bed with him?" Lett stated:

> Well, he did come back that night. He did come back that night. But I was scared, you know what I am saying, so I just went ahead and went to sleep. I was feeling—it was nothing at all. So I was just scared. And I let everything go that night.

Doc. 10-1 at 115–16. In her testimony that followed, Lett explained that Rhodes returned to her house early Sunday morning after the incident, entered her house without her knowledge, and walked into her bedroom and told her he was sorry for what he had done. *Id*. at 116-19. Lett testified that she was lying in her bed when Rhodes entered her room and that she allowed him to spend the night, with no sexual activity, because she was afraid of him. *Id*. That Lett initially answered no to the prosecutor's question about having contact with Rhodes on Sunday after the incident, and then explained upon further

17

questioning that Rhodes returned to her house early Sunday morning and spent the night, does not constitute proof of perjured testimony by Lett. At most, Rhodes shows an inconsistency in Lett's testimony, arguably occasioned by an ambiguity in the prosecutor's initial question. Rhodes demonstrates no willful intent by Lett to provide false testimony. Therefore, Rhodes's trial counsel was not ineffective for failing to challenge Lett's testimony as perjurious, and Rhodes fails to demonstrate cause to excuse the default of his substantive perjury claim.

## III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the petition for writ of habeas corpus under 28 U.S.C. § 2254 be DENIED and this case be DISMISSED with prejudice.

The Clerk of the Court is DIRECTED to file the Recommendation of the Magistrate Judge and to serve a copy on the petitioner. The petitioner is DIRECTED to file any objections to this Recommendation **on or before July 5, 2017**. Any objections filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which the petitioner objects. Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th

Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 21st day of June, 2017.

    /s/ Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE